THE NEW JERSEY ZINC AND IRON COMPANY

*v.*

CHARLES W. TROTTER et al.

The complainant claims the franklinite ore in certain land known as the northerly half of Mine Hill, under deeds made, one in 1848 and the other about a year afterwards. The defendant Trotter also claims that ore as lessee of a person who claims under a deed of the same grantor made in 1848. The complainant's deeds do not include the land in question in the description, though it says it was intended that the description should embrace those premises, and the bill is filed for rectification of the description so as to include the premises in dispute. The complainant, and those under whom it claims, had possession of the land from 1848 up to September, 1882, when Trotter took possession and fenced it out. In 1881 he recovered damages against the complainant's grantor in a federal court, in trespass, for taking franklinite from the property, and shortly afterward the complainant's grantor filed a bill in a federal court for rectification of the description, and applied for an injunction to restrain Trotter from mining the franklinite, which was denied. On motion for injunction in this suit to restrain Trotter from mining—*Held*, that an injunction should be allowed to preserve the property in question *pendente lite*. Also that the complainant was not disentitled to relief by laches in applying for the reformation of the description, notwithstanding the error was known as early as 1853, since its right was not questioned until Trotter obtained his lease, which was in 1879.

Bill for relief (to correct deeds &c.). On motion for interlocutory injunction.

*Mr. T. N. McCarter* (for complainant), for the motion.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker* (for Trotter), and *Mr. C. D. Thompson* and *Mr. George Northrop*, of Philadelphia (for A. Heckscher), *contra*.

THE CHANCELLOR.

The controversy between the parties is as to the title to what is designated as the westerly mine, lode, vein or bed of franklinite ore in and upon the northerly half of Mine Hill, in Sussex

county. The complainant claims it under a deed dated March 10th, 1848, given by Samuel Fowler to the Sussex Zinc and Copper Mining and Manufacturing Company, and another deed, confirmatory thereof, given by Fowler to that company about a year afterwards. The defendants are James L. Curtis, sole surviving trustee of the Franklinite Mining Company, who, when the bill was filed, claimed to hold (subject to the hereinafter-mentioned lease to Trotter) the legal title to the property in dispute by virtue of a deed dated December 30th, 1850, from Fowler to him and Daniel H. Curtis (now deceased) as trustees for that company; the Franklinite Mining Company and the Franklinite Steel and Zinc Company, which latter company claimed, when the bill was filed, to be the equitable owner of the rights of the Franklinite Mining Company in the property; Charles W. Trotter, who claims under a lease of the property for fifteen years from its date, April 10th, 1879, from James L. Curtis, as trustee for the Franklinite Mining Company, and August Heckscher, recently admitted as a defendant, who claims to own, by virtue of a conveyance since this suit was begun, all the title of James L. Curtis, surviving trustee of the Franklinite Mining Company, and all the title of the Franklinite Steel and Zinc Company. The main object of the suit is to correct the description of the land in the two deeds from Fowler to the Sussex Zinc and Copper Mining and Manufacturing Company, the complainant insisting that it is erroneous through mistake of the parties to the instruments. The description does not enclose the land which the complainant alleges the parties intended to embrace in it, but, on the contrary, will not, in the language of the surveyors, "close" at all. The complainant alleges that it was the intention of the parties to the deeds to convey by that description the franklinite in the northerly half of Mine Hill. The defendants deny this, and, on the other hand, claim the franklinite in and on that half of Mine Hill under the before-mentioned deed from Fowler to the Curtises, as trustees, which grants all the ore called franklinite, and all other ores or metals in and on certain premises in which Mine Hill is included, not granted by Fowler to the Sussex Zinc and Copper Mining and

Manufacturing Company by the before-mentioned two deeds, and another of the same date with the first-mentioned thereof, March 10th, 1848, by which he conveyed all the zinc, copper, lead, silver and gold ores, and all other metals, or ores containing metals, except the metal or ore called franklinite, and iron ore when it exists separate from the zinc, in certain premises, including Mine Hill. It will be seen, from what has been said, that the dispute between the parties is as to whether the complainant's conveyances of franklinite include that which is in or on the northerly half of Mine Hill or not. The complainant's immediate predecessor in the title which it claims—the New Jersey Zinc Company—was sued by Trotter in the United States circuit court for the district of New Jersey in an action of trespass to recover damages for taking away franklinite subsequently to the beginning of his term (he claiming under his lease), and the action resulted in a judgment in his favor in 1881. The defendant in that suit was unable to stand on its title under the deeds from Fowler, the jury not being able to find that they covered the *locus in quo.* Subsequently the New Jersey Zinc Company filed a bill in the United States circuit court for the eastern district of New York for a reformation of those deeds and a deed from the Sussex Zinc and Copper Mining and Manufacturing Company to it, dated in 1852, for the franklinite which it is claimed it was the intention of the parties to convey by the deeds from Fowler to the Sussex Zinc and Copper Mining and Manufacturing Company for franklinite. An application for an injunction upon that bill was denied on the ground (among others) that the matter in that suit was *res adjudicata*— that the complainant therein was concluded by the before-mentioned finding of the jury in the suit at law. The bill in this case seeks to rectify the description of the land in those deeds. It alleges that by mistake the description in the deeds from Fowler was so made as not to describe the premises which the grantor intended to describe. When the bill was filed the complainant was in possession of the premises in dispute, and it and those under whom it claimed had been in possession of the vein or bed from the time of the first conveyance by Fowler, which

New Jersey Zinc and Iron Co. *v.* Trotter.

was in March, 1848. Since the beginning of this suit Trotter, has taken possession and fenced the complainant out and threatens to remove and dispose of franklinite, and the complainant now asks that he be enjoined from so doing. It is urged in behalf of the defendants, in opposition, that the before-mentioned verdict of the jury, and the decision of the United States circuit court for the eastern district of New York, are conclusive against the application. But it is entirely clear to my mind that the verdict is of no weight whatever in this suit for reformation, except as it has established for the complainant the fact that it has no remedy at law and must therefore necessarily have recourse to equity for relief. It is obvious that the suit at law did not determine the right of the defendant therein to a rectification of its deeds, for that subject was not within the jurisdiction of that court in that action. The suit merely determined as to the deeds at most that the description of the land therein did not embrace the *locus in quo*. The question here is whether, conceding that fact, the description ought, in equity, to be altered so as to include that land. As to the suit in equity in the United States court, besides the fact that it was not brought by the complainant here, but by another corporation, it appears that it was not begun until after the complainant here had acquired its title. The deed from the New Jersey Zinc Company to the complainant in this suit is dated October 30th, 1880, and was recorded January 4th, 1881. The suit at law against the New Jersey Zinc Company was brought in 1879, but the trial did not take place until the spring of 1881, and therefore that suit in equity was not instituted until after the complainant therein had parted with its title to the complainant in this suit. It is urged, however, that this court should look into the relations between the New Jersey Zinc Company and the complainant here, to see whether they are not such as to lead to the conclusion that the two companies are substantially but one and the same company, and whether the complainant ought not, therefore, to be held bound by the result of that suit in equity. The view which I take of the extent of the examination as to the subject of controversy, which it is incumbent on the court to make in such a case as

this, on such a motion, made at such a stage of the cause, renders it unnecessary for me to enter upon that inquiry.

The court will, in many cases, interfere to preserve property *in statu quo* during the pendency of a suit in which the rights to it are to be decided, and that, without expressing, and often without having the means of forming, any opinion as to such rights. It will not interfere if it thinks that there is no real question between the parties, but if it sees that there is a substantial question to be decided, it will preserve the property until such question can be regularly disposed of; and in order to support an injunction for such purpose, it is not necessary for the court to decide upon the merits in favor of the complainant. If the bill states a substantial question between the parties, the title to the injunction may be good, although the title to the relief prayed may ultimately fail. *Joyce Prin. Inj. 29.* Here there are deeds by which it is to be presumed Fowler, the grantor, intended to convey the franklinite in some land which he attempted to describe. In his testimony, he says that, after he agreed to convey the zinc ore to the Sussex Zinc and Copper Mining and Manufacturing Company, he agreed to convey, and did convey to it, in March, 1848, the franklinite ore on a piece of land on the Mine Hill farm, and that the reason was that Samuel T. Jones, one of the directors of the company, in procuring subscriptions to the stock, had represented that the company owned franklinite ore, and the company made the purchase of the minerals (the franklinite) upon that lot (Mine Hill), to make the representation good. John George, who was superintendent of the mines of the Sussex Zinc and Copper Mining and Manufacturing Company, testifies that Fowler, in or about 1853, showed him the lines of the property which he intended to embrace in the description of the deeds (they are the same now claimed by the complainant); that James L. Curtis, who then was the president of the Sussex Zinc and Copper Mining and Manufacturing Company, showed him the same lines as the boundaries in 1853 or 1854, and that Alexander C. Farrington, who was the mining engineer of the company, showed him the same lines in 1853. Fowler, Farrington and Curtis were direct-

ors of the Franklinite Mining Company (which was a joint stock association) when the deed from Fowler to that company was given, and when they so showed the lines of the property to George. The Sussex Zinc and Copper Mining and Manufacturing Company and its successors mined upon the property in question, up to the time when the defendant Trotter took possession of the land and fenced it, in order to maintain sole possession thereof. It is insisted, however, on the part of the defendants, that such mining was not, previously to 1877, for franklinite, but for the red oxide of zinc, to which the company and its successors had a title under the before-mentioned deed of March 10th, 1848, which is not in question—the deed for zinc &c. In and from 1877, however, the New Jersey Zinc Company, it is admitted, mined franklinite there. The suit at law was brought by Trotter against that company for mining franklinite after April 10th, 1879. When he took his lease of 1879, he knew that that company claimed the right to mine franklinite, for that instrument was accompanied by an agreement that he should be indemnified out of the rents and royalties under the lease, for any costs, charges and expenses, at law or in equity, which he might incur, to obtain and enjoy the right of mining, under the lease, against that company or any other party. Curtis, by his answer, admits that, when that lease was made, that company was actually mining upon part of the premises covered thereby, and that one of the conditions of the lease or of the agreement just mentioned, was that Trotter was to institute legal proceedings against the company, and to furnish the funds wherewith to carry them on, and repay himself out of the royalties reserved in the lease.

It is urged, in behalf of the defendants, that the complainant is disentitled to the relief of rectification by laches, inasmuch as the error in the description of the land was discovered as early as about 1853, and neither it nor any of those under whom it claims title made any attempt to reform the deeds until the filing of the bill in the suit in equity in the federal court, before mentioned. But it does not appear that any question as to the location of the land described in the deeds was ever raised until

it was raised in the suit at law.   On the other hand, it seems that the location claimed by the complainant was acquiesced in up to the time when Trotter obtained his lease (in 1879), and hence the necessity for a reformation did not, so far as appears, present itself until the question was raised by Trotter.   Moreover, the complainant and those under whom it claims were in possession until after the bill in this suit was filed.   The reasonable rule on the subject is that, where there is no abandonment of the right claimed, nor any acquiescence in its enjoyment by another, inconsistent with the claimant's claim or demand, failure to apply for the relief will not bar the applicant of his remedy.   This rule is distinctly enunciated in the recent case of *Stith* v. *McKee* (1882), in the supreme court of North Carolina (*87 N. C. 389*), where the suit was brought to correct a deed given in 1826, and under which, in that year, the original purchaser under whom the plaintiffs claimed took possession, and he and those claiming under him kept it ever afterwards.   The court says that, while he and they were bound, like all others, to understand the law and know the legal import of the deed under which they held, they were not bound to anticipate an effort on the part of those who sold to them, or any claiming under them, to defeat the intention with which their deed was made, or to assert an inequitable claim to the land thereby conveyed; and it adds that, until assailed from some quarter, they were not called upon to act, and consequently no presumption can arise against them because of their failure to do so.   In *Wanner* v. *Sisson, 2 Stew. Eq. 141*, a deed was reformed between thirty and forty years after it was given, by adding words of inheritance, notwithstanding the alleged mistake (the omission of those words) was patent upon its face, and notwithstanding, after the death of the grantee and the termination of the estate which the operative language of the deed imported, the defendant had bought the title from the grantor's heir-at-law for value, though, as it was held, not without notice.   The rule in the analogous case of suit for specific performance, is that, where a person entitled to the conveyance, or he and those under whom he claims, have been in the uninterrupted possession of the

property, and using it as their own, objection on account of lapse of time cannot be sustained. *Miller* v. *Bear, 3 Paige 466.* See *Pom. Cont. 476* and *Daggers* v. *Van Dyck, 10 Stew. Eq. 130.*

The defendants claim that, by reason of want of notice to some of those through whom they derive title, their equity is superior to that claimed by the complainant. It is enough to say that that defence is not yet established, nor is it so presented as to warrant the denial of the application for an injunction on that ground. The court is called upon to take means to preserve the thing which is the real subject of the litigation, until the merits of the pending controversy here concerning it shall have been judicially ascertained. The thing in dispute is the right to the franklinite; and to permit Trotter, who is in possession, to remove and dispose of the ore, would be to allow one party to consume, for his own benefit, the subject of the controversy, while the suit brought to try his right to it is in progress. That, obviously, would be entirely contrary to justice. Where the acts threatened or done are such as tend to the destruction of the property in question, the court will, at the instance of a complainant out of possession, interfere, by injunction, to prevent them pending the trial of the title to the property at law. *Kerr on Inj. 289.* The principle is, of course, equally applicable to a case like this, where the trial of the title is necessarily in equity. Though the complainant is now out of possession, yet, as before stated, it was in possession when the bill was filed, and Trotter, though in possession now, is not so by the complainant's consent nor by virtue of any legal process, but, as appears by his affidavit put in on this motion, he took possession during the litigation, and on or about September 1st, 1882, at a time when, as he says, the premises were, as he was informed, deserted. He also says that, on taking possession, he ordered that all other persons should be excluded from the property, and that the mine openings should be fenced. It is therefore quite obvious that he is not only not in possession with the consent or acquiescence of the complainant or by virtue of any legal process, but, without either, has entered upon the premises, and is holding them to keep the complainant from regaining the possession

New Jersey Zinc and Iron Co. *v.* Trotter.

which it had at the filing of the bill, and which it, and those under whom it claims, had had for over thirty years. It is urged on behalf of Trotter, that the fact that he is under contract to furnish the ore under a contract made by him with the defendant Heckscher, and by the latter assigned to the Lehigh Zinc and Iron Company (limited), and that that company has made commercial arrangements upon the faith of the contract, which will inflict great pecuniary damage upon him or them if Trotter be restrained from executing the contract, is a cogent, if not a sufficient reason of itself, for refusing the injunction. But Trotter and Heckscher are both non-residents, and the Lehigh Zinc and Iron Company is a foreign corporation, located in Pennsylvania. Moreover, it appears that the contract, so far as the ore in the northerly part of Mine Hill is concerned—the ore in question in this suit—was merely an option of purchasing in case Trotter should obtain possession of the mine, vein, lode or bed there, or any part thereof. So that that part of the contract was based on the proviso that Trotter should have lawful right to mine, and therefore the contingency of his being restrained, by judicial proceedings, from mining there, on a question of his right to do so, manifestly was in the contemplation of the parties.

There is a substantial question between the parties in this suit, and, under the circumstances, the *status quo* should be preserved until it is determined.

There will be an order for an injunction to restrain Trotter and those under whom he claims, and those claiming under him, from mining any franklinite on the premises in question, and from removing any already mined therefrom.